. . SUCCESSION OF SERRALLÉS v. ASILO DE DAMAS ET AL.

APPEAL from the District Court of Ponce.

No. 790.—Decided June 11, 1912.

CONSTRUCTION OF WILL—LEGACY—HOSPITAL.—The question involved in this case
is as to which of the hospitals of Ponce is entitled to a legacy of 5,000 pro-
vincial *pesos* bequeathed by the ancestor of the plaintiff succession in favor
of the "Hospital de Caridad". (charity hospital) of Ponce. The trial court
held that according to the evidence the "Asilo de Pobres de Nuestra Señora
de la Guadalupe" (asylum for the poor of our Lady of Guadalupe), publicly
known by the name of "Hospital de Mendigos" (beggars' hospital), "Hos-
pital de Pobres" (hospital for poor people), and "Hospital de Mendigos y
Ancianos" (hospital for beggars and old people), being the only hospital
·devoted exclusively to sheltering the poor and the only one maintained ex-
clusively by charity, it should receive said legacy. It was decided on appeal
that from the evidence introduced the conclusion is reached that the intention
·of the testator was to bequeath said legacy to this hospital, and that the
.word hospital is applied indiscriminately to institutions devoted to sheltering
and receiving wanderers and poor persons, to raising and educating homeless
·children, and to curing indigent sick people, wherefore the said word "hos-
pital" has no such limited significance as the appellant desires to give it.

The facts are stated in the opinion.

*Messrs. José Tous Soto, Nemesio R. Canales* and *José A.
Poventud* for appellants.

*Mr. Francisco Parra Capó* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

This is an appeal from the District Court of Ponce. The
Succession of Juan Serrallés Colón appeared before that
court and set up substantially that they were the heirs of
said Juan Serrallés Colón, who died in the city of Barcelona
on September 22, 1897. That the said Serrallés died testate
on April 8, 1897, and his testament was duly made and pro-
tocoled in the office of the notary, Rafael León. That in the
6th clause of his testament he bequeathed a legacy in favor
of the "Hospital de Caridad," of Ponce, in the following
words:

"I bequeath in favor of the 'Hospital de Caridad' (Charity Hos-
pital), of this city, the· sum of 5,000 provincial *pesos*, which shall be

satisfied by my executors or heirs when it may become convenient to them, after paying the debts and legacies which subsist against my capital on the date of my death."

The petition there goes on to say that the petitioners found themselves in condition to carry out the will of the testator, turning over the 5,000 provincial *pesos,* or $3,000, to the said "Hospital de Caridad," of Ponce, but not knowing which hospital this was, or if in reality it existed, the petitioners came to the court, requesting of it an order, personally citing in due form all the hospitals and asylums of the city, and by the publication of edicts in the local newspapers directed to whatever other entity or association which may consider itself as having a right to said legacy, to the purpose that they might appear in court to claim their rights.

That, according to the information and belief of the petitioners, the only hospitals and asylums that existed in Ponce are the following: Hospital Tricoche, San Lucas Memorial Hospital, Santo Asilo de Damas, and Asilo de Ancianos Desamparados.

In answer to the citation and edicts, the four hospitals and asylums above-named appeared and filed complaints or petitions, as the case might be, and the case went to issue and trial, the court hearing the evidence and arguments for and against all the hospitals and asylums so named.

The court then made the following findings of fact:

First. That the "Hospital San Lucas" did not exist at the date of the said will, namely, April 8, 1897.

Second. That the "Hospital Tricoche" did not prove itself to be called a "Hospital de Caridad," nor that the testator knew that it was so called at any time; that the "Hospital Tricoche" has always been known publicly and generally in the community for more than 30 years under the name of "Hospital Tricoche," having on its building from its endowment the inscription "Albergue Caritativo de Tricoche"; that said "Hospital Tricoche" has turned away various sick

poor people, and that in it there are wards for rich people also, who are made to pay.

Third. That the "Asilo de Damas" has been known for more than 30 years, publicly and generally in the community, with that name always, or as "Santo Asilo de Damas," having on its building from the beginning the inscription "Santo Asilo de Damas"; that said Asilo de Damas did not show that the testator ever knew that it was called a hospital or asylum of charity, or that this in reality was its name; that the testator lived in Ponce and was a resident of that city; that the "Asilo de Damas" has never been known in Ponce under the name of "Hospital de Caridad"; that the "Asilo de Damas," as well as "Tricoche," rely on their own incomes; that the "Asilo de Damas" is partly for wealthy people and partly for poor ones; that neither "Tricoche" nor "Damas" devote themselves exclusively to charity; that the "Asilo de Damas" has refused entrance and aid to very poor people unless they pay for it.

Fourth. That the "Asilo de Pobres de Nuestra Señora de la Guadalupe" is a civil association, constituted under the law of associations about the year 1893 and existing to-day as such; that said "Asilo de Pobres" has been known and is known publicly in the community with the following names: "Hospital de Mendigos" (Beggars' Hospital), as "Hospital de Pobres" (Hospital for Poor People), and "Hospital de Mendigos y Ancianos" (Hospital for Beggars and Old People); that its dedication was a public fact and of general knowledge of which the press concerned itself; that the testator, Don Juan Serrallés, made a donation of 100 *pesos* for its dedication; that it is the sole asylum (*asilo*) in Ponce which admits, takes care of and cures sick people, beggars and infirm people of all classes without being paid therefor; that it maintains itself exclusively by gifts and charity; that it does not charge for medicines nor for doctors to those that take asylum there; that it has beds only for poor sick people and beggars without receiving wealthy people; that there

everybody is aided free of charge; that Juan Serrallés in his lifetime gave to it bedclothes, coverlets and sheets, which were presented in the trial, marked with the initials "H. de M.," which means "Hospital de Mendigos"; that this institution has not denied admission to any poor person, and about 1897 it was a public fact that they went out collecting to increase the charities of the asylum; that it is the only institution which has appeared that is exclusively for charity, practicing it disinterestedly; that the intention of the testator was not to leave the sum in question to an institution which called itself precisely "Hospital de Caridad" of Ponce, but to leave it to the institution, asylum or hospital which devoted its services most to charity; that the petitioner, the "Asilo de Pobres," is the institution which in reality most administers charity in Ponce.

As conclusions from these facts, the court decides as a matter of fact that the doctrine of *cy pres* is applicable to the case and that the sum of 5,000 provincial *pesos,* or $3,000, was payable to the petitioner, "Asilo de Pobres de Nuestra Señora de la Guadalupe." All the other petitioners appealed.

We think it pretty clear from the evidence that none of the appellants brought themselves within the terms of the will, but that the respondent did. It is true that the "Asilo de Damas" had technically a title, namely, "Hospital de Caridad," which would seem to bring it closer to the words used by the testator. But we quite agree that the nature of its charities and the acts and words of the testator preclude the idea that he had in mind such "Asilo de Damas."

A great deal of stress is laid by the appellant on the fact that the successful "Asilo de Pobres" is not in reality a hospital, but more properly an asylum or refuge. But it must be remembered that in popular usage these words are lightly interchangeable; that the marking of the linen showed that the testator in his lifetime regarded it as a hospital, and in point of fact the "Asilo de Pobres" is exclusively devoted to

the relief of the poor and needy whether that relief is shelter, food or medical assistance.

Alcubilla, in his "Diccionario de Administración," under the title "Beneficencia Pública," chapter 23, shows that the hospitals "Rey de Toledo," and "Jesús Nazareno" and "Nuestra Señora del Carmen de Madrid" are indiscriminately devoted to aiding the sick or needy, and also that the principal cause for ·beggary is sickness. And Escriche, in his "Diccionario de Legislación," defines *"hospicio y hospital"* as "houses destined to shelter and receive wanderers and poor persons, to raise ˙and educate children without homes and to cure sick people who lack means." So that we see again that the word hospital has no such limited significance as applied to sick people alone, as the appellants desired to give it. Some point is made on the fact that the district judge made an improper application of the *cy pres* doctrine. It is unnecessary to consider that question because we think that the intention of the testator is sufficiently shown by the will supplemented by the proof as indicated by the findings and conclusions of the court.

We find no error in the judgment, and the same must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, del Toro and Aldrey concurred.